IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ADELLA MESSICK                                                                                          PLAINTIFF

v.                                                  5:05CV00155 WRW/JTR

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                          DEFENDANT

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been submitted to United States District Judge William R. Wilson, Jr.. The parties may file specific written objections to these findings and recommendations and must provide the factual or legal basis for each objection. An original and two copies of the objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

**DISPOSITION**

Plaintiff, Adella Messick, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have submitted Appeal Briefs (docket entries #12 and #16), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial

evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff alleged disability[2] based on bipolar disorder, depression, anxiety, and seizures. (Tr. 91.) After conducting an administrative hearing on September 8, 2004 (Tr. 354-387), the Administrative Law Judge[3] ("ALJ") concluded that Plaintiff had not been under a disability at any time through November 15, 2004, the date of his decision. (Tr. 20-21.) On April 29, 2005, after receiving and considering additional evidence, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 5-7.) Plaintiff then filed her complaint initiating this appeal. (Docket entry #2.)

Plaintiff was 40 years old at the time of the administrative hearing, with a high school diploma and one year of college. (Tr. 359.) She has past relevant work as a cashier, convenience store manager, grocery store meat stock clerk, and meat wrapper. (Tr. 13, 20, 64-70, 359-361.) During the administrative hearing, the ALJ heard testimony from the Plaintiff (Tr. 358-377), her mother, Elmira Fernandez (Tr. 377-382), and a vocational expert (Tr. 382-387).

---

[1]*Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

[2]"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[3]The Hon. Roy H. Leonard.

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b)(2003). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).[4] If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(g). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset date[5] (Tr. 19); (2) had "severe" impairments, which included bipolar type 1 disorder, depression, anxiety, and morbid obesity[6] (*id.*); (3) did not have an impairment or combination of

---

[4] If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

[5] Plaintiff alleged an onset date for her disability of December 31, 1999. (Tr. 14, 50, 348.)

[6] During the administrative hearing, Plaintiff testified that she was 5' 6" tall and weighed 370 pounds. (Tr. 16, 363.) Her medical records consistently record her weight at "350+."

impairments that met or equaled a Listing (Tr. 19-20); (4) was not entirely credible regarding the extent of her limitations (Tr. 20); (5) retained the RFC for a wide range of unskilled sedentary work (*id.*); (6) was unable to perform any of her past relevant work (*id.*); but (7) was able to perform jobs that existed in significant numbers in the economy, including work as a food and beverage clerk in a restaurant and a lamp shade assembler.[7] (*Id.*) Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

In Plaintiff's Appeal Brief (docket entry #12), she argues that the ALJ erred: (1) by requiring some objective medical evidence of seizures; (2) in not giving more credence to her testimony of urinary and fecal incontinence; (3) in his credibility determination; and (4) in failing to properly weigh the opinion of her treating physician that she was disabled.[8] The Court will analyze each of these arguments separately.

First, Plaintiff argues that it was error for the ALJ to reject her claim of a seizure disorder based on the lack of supporting objective medical evidence. (*Pltf.'s App. Br.* at 8-9.) Plaintiff's point is not well taken. Proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992). During the administrative hearing, Plaintiff testified that she had seizures every day. (Tr. 363-364.) However, as the ALJ noted in his decision: (1) none of the neurologists who have examined Plaintiff have diagnosed a seizure disorder; and (2) in her medical records, Plaintiff rarely mentioned seizures to any of the

---

[7] In making his step 5 determination that Plaintiff could perform "other work," the ALJ relied on the testimony of a vocational expert. (Tr. 19, 382-386.) The ALJ also noted that, once Plaintiff was determined to be unable to perform her past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, give her RFC, age, education, and past work. (Tr. 19.)

[8] In his decision, the ALJ properly treated Plaintiff's obesity as a medically determinable severe impairment that he considered in evaluating whether she was disabled. He also considered the combined effects of obesity with Plaintiff's other impairments. However, the ALJ concluded that Plaintiff's reported "occasional pain in the back, head, wrists, and ankles, as well as her other diagnosed impairments, do not produce functional limitations to the extent that the claimant is completely disabled from performing substantial gainful activity." (Tr. 16.) In her Appeal Brief, Plaintiff does *not* argue that the ALJ erred in his analysis of her obesity as one of her severe impairments limiting her ability to work. For that reason, the Court need not address this issue.

treatment or examining physicians. (Tr. 17.) Likewise, Plaintiff continued to drive, notwithstanding her alleged seizures. (Tr. 16-17.) For example, for several days, Plaintiff drove a daily round trip of 130 miles to visit her son in the hospital. (Tr. 16-17.) It is hard to believe that Plaintiff could have driven that distance while having daily seizures.

To support the alleged severity of her seizures, Plaintiff cites to the fact that she was allegedly prescribed Zoloft, Depakote, and Lithium for treatment of her "seizure disorder." However, the medical record reveals that these medications were prescribed for her bipolar disorder, depression, anxiety, and panic attacks. (Tr. 311, 315.) In short, no physician has ever diagnosed Plaintiff with a seizure disorder, and the only substantial evidence supporting the existence and extent of Plaintiff's alleged seizure disorder comes from her own testimony. Thus, the Court concludes that Plaintiff's first argument is without merit.

Second, Plaintiff argues that the ALJ should have given more credence to her testimony of urinary and fecal incontinence. (*Pltf.'s App. Br.* at 12.) Again, other than Plaintiff's testimony, there is no medical evidence that Plaintiff ever complained of urinary incontinence to any medical personnel. Furthermore, there are only two entries in her medical records documenting any problems with fecal incontinence. Those two entries were made in July of 2003, shortly after her hemorrhoidectomy. (Tr. 119, 282, 306.) According to the treatment notes, her doctor advised her to return to the clinic in two weeks. (Tr. 282.) Importantly, she did not return for any further treatment, and it does not appear that she made any later complaint to any medical sources concerning her alleged fecal incontinence.

Third, Plaintiff contends that the ALJ erred in his credibility determination (*Pltf.'s App. Br.* at 14-15) and his reliance on the extent of her activities of daily living. (*Pltf.'s App. Br.* at 11.) The ALJ evaluated Plaintiff's subjective complaints in light of *Polaski v. Heckler*,[9] 739 F.2d 1320 (8th Cir. 1984). (Tr. 14-18.) In *Polaski*, the Court identified the following factors that an ALJ should

---

[9] The ALJ also cited and discussed S.S.R. 96-7p, which tracks *Polaski* and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

consider in evaluating a claimant's credibility:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of medication;
>
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

In a Disability Supplemental Interview Outline,[10] dated October 2, 2002 (Tr. 84), Plaintiff indicated that she groomed without assistance, did laundry and dishes, changed sheets, ironed, and took out the trash; although she did housework at a slow pace. (Tr. 80.) She maintained a household for her son and daughter (Tr. 83); flew to California to visit her sister (Tr. 315); and enjoyed four wheeler riding with her daughter. (Tr. 312.) Thus, Plaintiff engaged in extensive daily activities, which appears to be inconsistent with the level of pain and limitation alleged. *See Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006) (plaintiff performed household chores, mowed the lawn, raked leaves, shopped for groceries, and drove a car); *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (plaintiff attended college classes and church, shopped for groceries, ran errands, cooked, drove, walked for exercise, and visited friends and relatives); *Haley v. Massanari*, 258 F.3d 742, 48 (8th Cir. 2001) (plaintiff took care of personal needs, washed dishes, changed sheets, vacuumed, washed cars, shopped, cooked, paid bills, drove, attended church, watched television, listened to

---

[10]She did not complete the second page of the form. (Tr. 81.)

radio, read, and visited friends and relatives); *Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999) (plaintiff cared for himself, did household chores, drove short distance, performed other miscellaneous activities).

The ALJ's credibility analysis was proper. He made express credibility findings and gave multiple valid reasons for discrediting Plaintiff's subjective complaints. *E.g., Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995).

Finally, Plaintiff argues that the Commissioner did not assign the proper evidentiary weight to the opinion of Don G. Howard, M.D., one of her treating physicians, who expressed the unequivocal opinion that she was disabled. It appears that Dr. Howard treated Plaintiff a total of nine times from May 21, 2003, to February 19, 2004. (Tr. 335-338, 340-343, 346.) Although his office notes are difficult to read, it appears these visits were for the following medical problems: (1) three visits related to an elbow injury and related pain (Tr. 335-337); (2) one visit was after an automobile accident (Tr. 338); (3) two visits pertained to complaints of a sore breast (Tr. 340-341); (4) one visit was for treatment of genital warts (Tr. 346); and (5) two visits appear to be centered on Plaintiff obtaining prescriptions for medications originally prescribed by other physicians, which she had stopped taking for a period of time.[11] (Tr. 342-343.) While none of these visits appear to have involved Dr. Howard treating any of the severe impairments supporting Plaintiff's claim that she is disabled, she and Dr. Howard undoubtedly discussed her medical history. Thus, Dr. Howard was in a good position, based on his having seen Plaintiff on numerous occasions over a more than one-year time frame, to express an informed opinion concerning whether she was able to perform

---

[11]On January 15, 2005, Dr. Howard examined Plaintiff for complaints of severe low back pain due to a fall. (Tr. 353.) An MRI revealed the impression of some bulging at L3-4, which was approaching the left L3 nerve root. During these numerous office visits, Dr. Howard recorded Plaintiff's frequently elevated blood pressure and noted her weight as "350 plus," probably because Dr. Howard did not have scales equipped to register a patient's weight above 350 pounds. Dr. Howard's numerous examinations of Plaintiff, as her treating physician, unquestionably placed him in a good position to evaluate Plaintiff's numerous mental and physical impairments.

any work.

In a "To Whom It May Concern" letter, dated January 19, 2005, Dr. Howard stated the following unequivocal opinion:

> Adella Messick is a patient of mine and has been for some time. She is permanently unable to work due to the following reasons: COPD, asthma, seizure disorder, bipolar disorder, obesity, hypertension, depression, OHD and anemia.
>
> If you have any questions, please contact my office at the above number.

(Tr. 351.)[12] While Dr. Howard expressed his opinion in a somewhat conclusory fashion, he was very specific in identifying the severe impairments that support his opinion that Plaintiff "is permanently unable to work." The Court concludes, as a matter of law, that this opinion by Dr. Howard, which was based on his numerous examinations of Plaintiff over more than one year, was entitled to the kind of substantial deference and evidentiary weight normally given to the opinion of a long-time treating physician. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991.)

As indicated previously, the ALJ entered his decision on November 15, 2004, a number of months *before* Dr. Howard prepared his January 19, 2005 letter expressing his opinion that Plaintiff was disabled. Thus, the ALJ did *not* have the benefit of Dr. Howard's letter at the time he made his decision. As a result, the ALJ supported his decision by citing only the opinions of non-examining physicians who merely reviewed Plaintiff's medical records before concluding that Plaintiff "is not disabled." (Tr. 18.) The Eighth Circuit has found the opinions of such non-examining physicians to be entitled to little evidentiary weight. *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000); *Dykes v. Apfel*, 223 F.3d 865 (8th Cir. 2000); *Lauer v. Apfel*, 245 F. 3d 700 (8th Cir. 2001). Finally, in the ALJ's decision he points out that, as of November 15, 2004, "no other treating or examining physician has suggested that the claimant's impairments preclude her from work." (Tr. 15.) Of course, this statement raises a serious question concerning whether the ALJ would have reached the same decision if, prior to November 15, 2004, he had the benefit of Dr. Howard's January 19, 2005

---

[12]OHD is the abbreviation for organic heart disease. Neal M. Davis, MEDICAL ABBREVIATIONS: 15,000 CONVENIENCES AT THE EXPENSE OF COMMUNICATIONS AND SAFETY, 236 (10th ed. 2001).

letter.

On April 24, 2005, the Appeals Council received into evidence Dr. Howard's January 19, 2005 letter and his medical records associated with his examination of Plaintiff on January 15, 2005. (Tr. 8.) Yet, on the same date these documents were received into evidence, the Appeals Council, without any explanation or analysis, entered its opinion denying Plaintiff's request for review of the ALJ's decision.[13] (Tr. 5-7.)

Under controlling Eighth Circuit case law, Dr. Howard's opinion is entitled to substantial evidentiary weight. Furthermore, even without Dr. Howard's opinion, the question of whether Plaintiff's numerous severe impairments allowed her to perform any sedentary work was a close one. Once the Appeals Council concluded that this letter should be allowed to be introduced into evidence, it called the ALJ's decision into serious question and required that the case be remanded so that the ALJ could have the benefit of Dr. Howard's letter in reweighing the medical evidence. Because the Appeals Council's decision contains no analysis of the evidentiary weight it assigned to Dr. Howard's letter or what led it to summarily affirm the ALJ's decision, in the face of that important new medical evidence, the Court is left to speculate on far too many aspects of how the Appeals Council arrived at is decision. Thus, the Court concludes that this case must be reversed and remanded.

On remand, the ALJ should supplement the medical record and accept the invitation in Dr. Howard's January 19, 2005 letter to have him explain in more detail the complete medical basis for his opinion that Plaintiff is disabled. One other point also deserves mention. In his RFC determination, the ALJ found that Plaintiff could perform a wide range of unskilled sedentary work, which was only "somewhat limited by her obesity." At the time of his decision, Plaintiff's weight was approaching 400 pounds, a size that would seem to be more than just "somewhat limiting," even

---

[13]The Appeals Council's decision states only that it "found this information [Dr. Howard's January 19, 2005 letter expressing the opinion that Plaintiff was disabled] does not provide a basis for changing the ALJ's decision." (Tr. 5-6.)

for sedentary work.  On remand, the ALJ should fully develop the medical record regarding the limitations Plaintiff's morbid obesity imposes on her RFC to perform sedentary work and insure that his hypothetical question to the vocational expert fairly captures the concrete consequences of all of her severe physical and mental limitations.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be reversed and remanded for action consistent with this opinion.  This recommended remand would be a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 7th day of July, 2006.

_____
UNITED STATES MAGISTRATE JUDGE